822 So.2d 423 (2001)
P.W.
v.
STATE DEPARTMENT OF HUMAN RESOURCES.
2000355 and 2000813.
Court of Civil Appeals of Alabama.
October 19, 2001.
Rehearing Denied December 14, 2001.
*424 Ruth Ann Hall, Tuscaloosa, for appellant.
J. Coleman Campbell and Lynn S. Merrill, asst. attys. gen., Department of Human Resources, for appellee.
YATES, Presiding Judge.
These appeals are from a judgment terminating the parental rights of P.W. as to her minor child I.L. (We will address first the appeal in case no. 2000355, which directly challenges the judgment terminating parental rights; the second appeal raises a collateral issue, and we will address that appeal after discussing the issue raised in the first appeal.) On March 31, 1999, the Tuscaloosa County Department of Human Resources ("DHR") petitioned for temporary custody of the child. DHR alleged, among other things, that the child was dependent; that the child had been mentally, physically, or emotionally abused by his parents; that the mother was a "known crack user" and that the child had been born addicted to crack cocaine. The court awarded DHR temporary custody on April 9, 1999. During the next 18 months, DHR submitted to the court judicial-review reports that recommended that efforts continue toward reunification, and the court approved the recommended plans.
On August 30, 2000, the guardian ad litem for the child petitioned for the termination of the mother's parental rights, alleging that the child had been in DHR custody since March 31, 1999; "that no progress was made by the mother during the past year and one half"; that the mother had "paid little if any support and has given birth to another child, which was voluntarily surrendered for adoption"; and that the mother had refused DHR services. On September 25, 2000, DHR submitted to the court a judicial-review report stating that a "permanent plan for [the child] is to return to parent. The target date for achieving this plan is March 25, 2001." The juvenile court concurred with this plan. On October 11, 2000, the caseworker wrote a letter to the court to explain that the petition to terminate parental rights had been initiated at the request of the mother; however, after the mother withdrew her request, DHR and the guardian ad litem decided to pursue a termination hearing. The caseworker stated in her letter that the agency would continue to work with the mother until her *425 "efforts toward reunification can be reviewed," while also pursuing the termination process.
After conducting an ore tenus proceeding, the court, on December 13, 2000, terminated the mother's parental rights, finding that the child was dependent; that the condition of the mother was unlikely to change in the foreseeable future; that the mother had failed to provide for the material needs of the child or to pay a reasonable portion of his support even though there was evidence of an ability to do so; that the mother had exhibited a lack of effort to adjust her circumstances to meet the needs of the child; that reasonable efforts to rehabilitate and train the mother toward reunification had failed; and that there were no viable alternatives to the termination of parental rights.
The mother appeals from the judgment terminating her parental rights (case no. 2000355).
This court has consistently held that the trial court must apply a two-pronged test when a nonparent institutes proceedings seeking the termination of parental rights. See KM. v. Shelby County Dep't of Human Res., 628 So.2d 812 (Ala. Civ.App.1993). First, the court must determine that the child is dependent, according to clear and convincing evidence. Second, the court must find that there exists no viable alternative to termination of the parent's custodial rights. J.L. v. State Dep't of Human Res., 688 So.2d 868, 869 (Ala.Civ.App.1997). Although a child's parents have a prima facie right to custody, the paramount concern in these proceedings is the best interests of the child. Id.; see also, S.W. v. Walker County Dep't of Human Res., 709 So.2d 1267 (Ala.Civ. App.1998).
"`The trial court is given the authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. The trial court shall consider whether the parents have abandoned their children, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. If the children are not in the physical custody of their parent or parents, the trial court shall also consider such circumstances as whether the parents have provided material needs for the children, whether the parents have maintained regular, scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially.'"
A.R.E. v. E.S.W., 702 So.2d 138, 139 (Ala. Civ.App.1997) (quoting M.H.S. v. State Dep't of Human Res., 636 So.2d 419, 421 (Ala.Civ.App.1994) (citations omitted)).
The child was taken into protective custody following the mother's arrest on March 30, 1999, for public intoxication. According to the DHR caseworker assigned in April 1999, the child was placed in DHR custody because the mother "had left him with someone to care for who appeared, when the worker went out, he appeared to be intoxicated." We note that the initial dependency petition alleged that "the child was with the mother at the time of her arrest" and that "the child was placed with a convicted child molester."[1] *426 Neither of these allegations was correct; the child was being cared for by the mother's boyfriend, J.H., at the time of her arrest. According to the July 1999 DHR report, the child was "wet and soiled," and his clothes were dirty and too small, and DHR placed the child in protective custody.
The subsequent DHR case reports to the court indicate that the mother was complying with her Individual Servicing Plan (ISP) and that the agency was working toward reunification at the time the petition to terminate parental rights was filed. In the September 2000 DHR case report, the worker stated that the mother had remained drug free (she had passed four or five drug screens); had sought employment through the vocational rehabilitation program; was currently attending individual counseling and parenting classes; and that she was visiting the child on a weekly basis. The report stated, in part:
"The permanent plan for [the child] is return to parent. [The mother] has been ordered to remain drug free, improve parenting (decision making) skills and seek employment. [The mother began] submitting to random drug screens in July 1999. All of the drug screens have been negative. She also participated in the CAPPS (Child Abuse Prevention Program). [The mother] visits [the child] on a weekly basis. These visits are supervised by DHR. [The mother] acts appropriately during these visits. She is always on time or early and always brings [the child] lunch (which is usually something she has cooked) as well as toys that she thinks he will like. [The mother] has also brought snacks for him to take with him to the foster home. [The mother] gave birth to another child in May 2000. She gave this child up for adoption. She relapsed shortly after giving that child up, however, she has since gotten back on track and is complying with the case plan."
The mother wrote a letter to the court in October 2000, expressing her concern regarding the lack of assistance being provided by her court-appointed attorney and asking that the court appoint another attorney to assist her. The record also contains a letter from the mother's therapist who provided individual therapy to her from June through December 2000. In his letter, dated December 11, 2000, he stated that the mother had made excellent progress in maintaining an appropriate relationship with her child and that she had made "excellent efforts toward reunification." His letter states, in part,
"In fact, [the mother] has required few direct interactions and has been able to work with her son in an appropriate manner in all sessions I have observed. As you are also aware, her son has continued to be very close to his mother and has shown problems when the sessions are over. In fact, the best way for the sessions to be ended is for [the mother] to carry him to the car of the DHR personnel. This lessens the crying by her son and facilitates a smoother transition. In closing, I feel [the mother] has made excellent efforts to show a desire to make changes in her life and to work toward regaining custody of her son."
Although the mother has a limited IQ and did not consistently pay the courtordered child support, we note that her only source of income is $512 in Supplemental Security Income (SSI) benefits. Out of that limited income, the mother made four payments. She has visited the child on a weekly basis and has passed the drug screens. The mother testified that she has complied with the ISP goals, that she still loves the child, that she is drug *427 free, and that she has obtained her own apartment.
Based on the evidence presented, we conclude that the termination of the mother's parental rights was premature. The evidence indicates that the mother was complying with the ISP goals and that DHR was working toward reunification at the time the petition was filed. Although the trial court may determine that termination of the mother's parental rights is in the child's best interest if the mother fails to meet the goals DHR has established for her, the evidence did not support that determination at the time of the hearing. K.A.C. v. Jefferson County Dep't of Human Res., 744 So.2d 938 (Ala.Civ.App. 1999), V.M. v. State Dep't of Human Res., 710 So.2d 915 (Ala.Civ.App.1998). Accordingly, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.
During the pendency of her appeal in case no. 2000355, the mother filed a second appeal to this court (case no. 2000813), arguing that the trial court had abused its discretion in denying her a new trial based on her claim of ineffective assistance of counsel. Because we are reversing the judgment terminating the mother's parental rights, we pretermit discussion of the issue raised in the second appeal.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
MURDOCK, J., concurs.
CRAWLEY, J., concurs in the result.
THOMPSON and PITTMAN, JJ., dissent.
PITTMAN, Judge, dissenting.
I respectfully dissent. While I have no disagreement about the applicable law in this case, I simply believe the trial court had before it more than sufficient evidence to support a termination of parental rights, and I do not believe that the ruling of the trial court was plainly and palpably wrong.
P.W.'s contention on appeal is that the decision to terminate P.W.'s parental rights was contrary to the law and contrary to the weight of the evidence. In H.M.W. v. Mobile County Department of Human Resources, 631 So.2d 1049, 1050 (Ala.Civ.App.1993), this court held the following:
"It is the consideration for the best interests of the child that lies at the heart of every proceeding to terminate parental rights. L.G. [v. State Dep't of Human Resources, 603 So.2d 1100 (Ala.Civ. App.1992)].
"The trial court is given the authority to terminate parental rights if it finds from clear and convincing evidence that the parents are unable or unwilling to discharge their responsibilities to and for the children. § 26-18-7, Ala.Code 1975. The trial court shall consider whether the parents suffer from emotional illness, mental illness, or mental deficiency, whether the parents have abandoned their children, whether the parents have problems with drugs or alcohol, and whether reasonable efforts to rehabilitate the parents have failed. § 26-18-7(a), Ala.Code 1975. If the children are not in the physical custody of their parent or parents, the trial court shall also consider such circumstances as whether the parents have provided material needs for the children, whether the parents have maintained regular, scheduled visits with the children, and whether the parents have adjusted their circumstances to meet the needs of the children according to agreements reached administratively or judicially. § 26-18-7(b), Ala.Code 1975.
"... In such cases as this, where a nonparent is the petitioner, the trial *428 court's determination is governed by the application of a two-pronged test. Ex parte Beasley, 564 So.2d 950 (Ala.1990). First, the trial court must conclude from clear and convincing evidence that the child is dependent. Id. Second, the court must consider and reject all other viable alternatives to termination of parental rights, so that it can conclude that the termination is in the child's best interests. Beasley, supra."
The trial court heard testimony presented ore tenus and had access to the court file, which contained a variety of reports, previous orders, and other related documents. After the hearing the trial court issued an order that made a number of findings directly referencing the circumstances and factors listed above.
My review finds the record replete with clear and convincing evidence that supports the termination of P.W.'s parental rights. P.W., as outlined in the statute, does in fact suffer from a mental deficiency. Her index score on the combined intelligence test was 76, which is at the 5th percentile in the below-average range. P.W. has continuing problems with drugs. She tested positive for cocaine at her 72-hour hearing, after the arrest which precipitated I.L.'s removal. She free-based cocaine in the presence of her other child, who was born previous to I.L., and who had heart and breathing problems, and her drug use only exacerbated those conditions, which ultimately caused the child's death. In a report done in June 1997, she admitted to drinking since she was 13 and using cocaine consistently from 1992 to 1996. Most importantly, although she had several drug screens that were negative when I.L. was in the custody of DHR, she also admitted using drugs again from May 2000 through August 2000, after the birth of another child, who was given up for adoption. The record indicates that reasonable efforts to rehabilitate P.W. have failed, given the fact that she admitted using drugs for a four-month period during which she quit coming to DHR and submitting to drug tests, and the fact that even now she refuses to enter a formal drug-treatment program. While I.L. was in the custody of DHR, P.W. did not provide for I.L.'s material needs in that she made only four of the monthly support payments of $100 ordered by the court during the 17 months from July 1999 through December 2000, and she made only partial payments for those months so that the total of the four payments was only $215. Lastly, P.W. went to DHR in May 2000, after the birth of the child who was given up for adoption and when asked to take a drug screen, she got upset, refused, and told the case worker that she would just terminate her parental rights. While P.W. has managed to complete a parenting class and to find a place of her own (just days before the hearing, and no DHR worker had inspected the residence yet), and pass the few drug screens that she has allowed to be taken, I know of no requirement that a child be left in temporary foster care indefinitely while a mother makes halting and unconvincing steps toward being able to care for her child. "At some point it becomes necessary to say that the children require a more permanent placement." D.G. v. State Dep't of Human Resources, 569 So.2d 400, 403 (Ala.Civ.App.1990).
Under the applicable standard of review, the juvenile court's determination that termination of the mother's parental rights was in the best interests of the child is presumed correct and will not be reversed unless it is unsupported by the evidence so as to be plainly and palpably wrong. H.M.W., 631 So.2d at 1050. Given the facts of this case, I cannot say the judgment of the trial court was plainly and palpably wrong.
*429 I would like to reiterate that I simply disagree with the main opinion as to whether there is sufficient evidence to terminate the parental rights of P.W. Termination cases are, in many respects, among the most difficult we handle on this court. However, I do not believe the trial court's mandate to find that there are no viable alternatives to termination should mean that simply marginal compliance with the ISP, staying selectively drug-free, and refusing to enter a drug-treatment program are sufficient steps to avoid termination. These facts, in my opinion, constitute a clear example of a failure of reasonable efforts to rehabilitate P.W. and show conclusively that P.W. has not adjusted her circumstances to meet the needs of her child.
THOMPSON, J., concurs.
NOTES
[1] The alleged "child molester" was E.L.; the mother had named E.L. as the father of the child. A blood test subsequently determined that E.L. was not the biological father of the child and at the time of the termination proceeding, the identity of the father was unknown.