PER CURIAM.
A.M.F. (“the mother”) appeals from a judgment of the Tuscaloosa Juvenile Court terminating her parental rights to C.G. (“the child”). We affirm.

Facts and Procedural History

The child was born on May 26, 2004. Before the child was born, the mother had been convicted of armed robbery; she was placed on probation. When the child was 17 months old, the mother was sent to prison for violating her parole. The mother remained in prison until September 2007. The mother did not have any contact with the child while she was in prison. The mother entered the supervised-reentry program at the Lovelady Center when she was released from prison.
The Tuscaloosa County Department of Human Resources (“DHR”) first became involved with the family in July 2008. At that time, the child was living with her paternal relatives due to the mother’s incarceration and subsequent placement at the Lovelady Center. When DHR became involved with the family, the child’s paternal grandfather had tested positive for marijuana use. The child also had extensive dental-health issues. Additionally, DHR performed a child-abuse and neglect investigation of the child’s father, R.G. (“the father”), which resulted in indicated findings for sexual abuse and neglect of the child. DHR removed the child from the care of the paternal relatives and placed the child in foster care.
After DHR was awarded legal custody of the child, it placed the child with the mother at the Lovelady Center as a trial placement. According to the mother, she successfully completed the program at the Lovelady Center; however, she did not leave the Lovelady Center at the time she completed the program because she had nowhere else to live. In March 2009, the Lovelady Center asked the mother to leave, alleging that she had violated its rules regarding having men in the center. When the mother left the Lovelady Cen *1208 ter, she left the child in its day-care facility. The mother testified that she did not notify DHR that she had left the Lovelady Center or that she did not have a place to live. On the same day that she left the Lovelady Center, the mother executed a consent to the adoption of the child through an attorney specializing in private adoptions. DHR was not involved in arranging the execution of the adoption consent; DHR, which had legal custody of the child, refused to allow the child to be adopted because the child was in its care and because the child had a legal father. DHR retrieved the child from the Lovela-dy Center and placed her in foster care in Tuscaloosa.
According to the mother, after she left the Lovelady Center, she lived on the streets for three months. She had no contact with DHR or the child during that three-month period. The mother then moved to Brewton in June 2009, where she lived with a man who was the mother’s boyfriend at the time. While living in Brewton, the mother worked for three months at a Dollar Tree discount store. The mother had some contact with the child by telephone during the time she lived in Brewton. The mother did not have any visitation with the child during that time. The mother testified that she did not have an automobile or a driver’s license; the mother stated that she suffers from seizures, which prevent her from obtaining a driver’s license.
In June 2010, the mother moved to Tuscaloosa, where she lived with her aunt. The mother’s uncle also lived in the aunt’s mobile home, along with S.D., who the mother claimed at trial was actually the father of the child. In October 2010, the aunt asked the mother to leave the aunt’s home because the mother and S.D. were not getting along; S.D. continued to live in the aunt’s home. The mother then lived for a short time with an elderly woman in a mobile home that lacked electricity or running water.
The mother testified that, during the time she had lived in Tuscaloosa, she had visited with the child seven times. The mother did not visit with the child from the time she left the child at the Lovelady Center in March 2009 until June 2010. Rhonda Lee, a DHR caseworker, testified that the mother visited with the child four or five times. The visits were all supervised by DHR. Lee testified that the visits all occurred at times requested by the mother. Lee also testified that the mother could have had additional visits with the child but that she had not requested any additional visits.
In October 2010, the mother moved to Dora in Walker County, where she continued to live at the time of trial. The mother testified that she was living with her fiance, R.L., in a three-bedroom, two-bath mobile home. R.L.’s mother and stepfather also lived in the mobile home, which was titled in R.L.’s mother’s name. According to the mother, she became engaged to R.L. around the time she moved in with him; the mother stated that she had known R.L. “since third grade.” The mother testified that R.L. had been previously convicted of burglary and that he was currently on probation. The mother further testified that R.L. worked with the local carpenter’s union, where he earned $16.95 per hour plus overtime.
The mother also testified that she had obtained employment with Diversco, which she was scheduled to start in January 2011. The mother stated that the job would entail cleaning duties at various Alabama Power Company facilities and that she would earn $10 per hour. Lee testified that the mother had not been in contact with DHR after she moved to Dora. Lee further testified that the mother had *1209 not informed DHR of her address in Dora or that she was living with R.L.; DHR also had not had an opportunity to check R.L.’s background.
Lee testified that DHR had offered the mother drug screens, counseling for the child, visitation, and telephone contact with the child. Lee further testified that DHR had attempted to make contact with the child’s relatives. DHR also offered the father counseling. Lee answered “no” when asked whether the mother had completed any counseling. Lee stated that the mother had not obtained stable housing or a means of support during the entire time that the child had been in foster care. The mother admitted that she could not take care of the child at the time of the trial. The mother testified that she thought she could be ready to provide for the child in an additional six months. When asked how long she thought was fair to make the child wait for her to turn things around, the mother answered that making the child wait was not fair to the child. The mother also admitted that she had not been able to provide a stable home for the child at any time during the two and a half years that the child had been in foster care. The mother further testified that DHR had tried to work with her, and she answered “no” when asked whether there was anything else DHR could have done.
The juvenile court entered a judgment on December 28, 2010, terminating the mother’s and the father’s parental rights to the child.[1] The juvenile court made detailed findings of fact and conclusions of law in its judgment. Among its findings, the juvenile court determined that the conduct and condition of the parents rendered them unable to properly care for the child and that such conduct and condition was unlikely to change in the foreseeable future, that the parents had failed to provide for the material needs of the child during the time the child had been in the custody of DHR, that the parents had failed to comply with the conditions of their individualized service plan, that the parents had exhibited a lack of effort to adjust their circumstances to meet the needs of the child, and that DHR had made reasonable efforts to rehabilitate the parents to enable the child to be reunified with the family but that those efforts had failed. The juvenile court also determined that no viable alternatives existed to the termination of the parents’ parental rights. The juvenile court further stated that it had considered the recommendation of the child’s guardian ad litem, who recommended termination of the parents’ parental rights. The mother subsequently appealed to this court.

Issues

The mother raises two issues in her appeal: (1) whether the juvenile court erred when it determined that DHR had used reasonable efforts to reunite the mother with the child and (2) whether the juvenile court’s judgment was supported by clear and convincing evidence.[2]

Standard of Review

“The juvenile court’s factual findings based on evidence presented ore tenus *1210 in a judgment terminating parental rights are presumed correct. R.B. v. State Dep’t of Human Res., 669 So.2d 187 (Ala.Civ.App.1995). The judgment terminating parental rights based on those findings will be reversed only if the record demonstrates that the decision is unsupported by the appropriate quantum of evidence, i.e., clear and convincing evidence, and is plainly and palpably wrong. Ex parte T.V., 971 So.2d 1, 4-5 (Ala.2007).”
F.I. v. State Dep’t of Human Res., 975 So.2d 969, 972 (Ala.Civ.App.2007).

Analysis

The mother first argues that the juvenile court erred in terminating her parental rights because, she says, DHR did not make reasonable efforts to reunite her with the child.[3] Whether DHR has made reasonable efforts to reunite a parent and a child is a fact-dependent inquiry. J.B. v. Jefferson Cnty. Dep’t of Human Res., 869 So.2d 475, 482 (Ala.Civ.App.2008). “[T]he efforts actually required by DHR in each case, whether the court is considering rehabilitation or reunification, depend on the particular facts of that case, the statutory obligations regarding family reunification, and the best interests of the child.” J.B., 869 So.2d at 482.
In support of her argument on this issue, the mother cites H.H. v. Baldwin County Department of Human Resources, 989 So.2d 1094 (Ala.Civ.App.2007) (opinion *1211 on return to remand)(authored by Moore, J., with two judges concurring in the result), in which we reversed a juvenile court’s judgment terminating a parent’s parental rights, holding that DHR had not made reasonable efforts to reunite the parent with the child. In this case, the mother argues that, like in H.H., DHR did not offer her sufficient services to address her particular needs — a lack of stable housing and employment. Although a plurality of this court in H.H. held that, in that case, DHR had not made reasonable efforts to reunite the parent and the child, the main opinion also recognized that,
“[i]n a proceeding to terminate parental rights, a juvenile court must consider a parent’s lack of effort to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached with DHR as evidence of the parent’s inability or unwillingness to discharge his or her parental responsibilities to and for the child. Ala.Code 1975, § 26-18-7 [now, § 12-15-319(a)(12) ]. This statute contemplates that a parent’s actual lack of effort is to be considered in relation to a reasonable reunification plan that is already in place. The statute negates any implication that the legislature intended that DHR would not have to formulate a reasonable reunification plan in cases in which DHR or the juvenile court concluded that the parent might not or even probably would not follow the plan.”
H.H., 989 So.2d at 1107. The main opinion in H.H. then concluded that, to the extent the trial court may have relied on the parent’s predicted failure to attempt to rehabilitate herself, the trial court had erred. Id.
In this case, the mother had no contact with the child from when the child was 17 months old until she was 4 years old because of the mother’s incarceration. Then, after DHR had reunited the mother and child in a trial placement at the Lovelady Center, the mother left, after being accused of breaking the Lovelady Center’s rules, and failed to notify DHR that she had left the child at the Lovelady Center day-care facility. The mother also did not notify DHR that she did not have a place to live and did not provide DHR with any way to contact her. As a result, DHR had no way to contact the mother for over three months. Additionally, the mother consented to the private adoption of the child. The mother then moved away from the child, to Brewton, to live with a boyfriend. The mother made no effort to visit the child over the next year while she lived in Brewton. The mother moved back to Tuscaloosa only after DHR filed its petition to terminate the mother’s parental rights. The mother lived with her aunt while in Tuscaloosa, but she had to leave the aunt’s home because she and an unrelated man, whom the mother claimed at trial was the actual father of the child, could not get along. The mother then moved away from the child again, to Dora, where she began living with her fiancé and his mother and stepfather, in a mobile home owned by the fiancé’s mother. The mother again did not notify DHR that she had moved or with whom she was living. The mother has not achieved stable housing or lasting employment for the entire time that DHR has been involved with the family. Additionally, according to Lee, there were times when DHR had no way to contact the mother and no way to know where she was living. The mother also acknowledged at trial that she could not care for the child, but she speculated that she might be able to in six months.
The juvenile court, in its judgment, determined that DHR had made reasonable efforts to reunite the mother and the child. At the hearing, Lee testified regarding the services DHR had offered to the mother in *1212 an attempt to reunite the mother and the child. Lee also testified whether, and to what extent, the mother had taken advantage of those services. Although DHR must make reasonable efforts to reunite a parent and child, the parent must make himself or herself available to DHR and must make an effort to address his or her issues and improve his or her circumstances. The juvenile court could have concluded that the mother had made no serious efforts to rehabilitate herself, that she had not made herself available for rehabilitation, and that any additional efforts by DHR would have been futile. Cf. K.P. v. Etowah Cnty. Dep’t of Human Res., 43 So.3d 602, 607 (Ala.Civ.App.2010) (holding that the Etowah County DHR had no duty to provide services to an incarcerated mother because she was not able to receive those services). See also In re Tiffany B., 228 S.W.3d 148, 159 (Tenn.Ct.App.2007) (“Reunification of a family, however, is a two-way street, and neither law nor policy requires the Department [of Children’s Services] to accomplish reunification on its own without the assistance of the parents. Parents share the responsibility for addressing the conditions that led to the removal of their children from their custody. They must also make reasonable efforts to rehabilitate themselves once services have been made available to them.”(internal citations omitted)). The mother herself admitted that DHR had tried to work with her, and she agreed that there was nothing more that DHR could have done to rehabilitate her.[4]
Moreover, based on the evidence before the juvenile court, it does not appear that the mother made any real efforts toward reunification with the child until after DHR filed its petition to terminate the mother’s parental rights. Only then did the mother move back to Tuscaloosa to be near the child. Thus, the juvenile court could have viewed those efforts by the mother as “late, incomplete and, therefore, unconvincing, measures taken only in anticipation of the termination-of-parental-rights hearing.” J.D. v. Cherokee Cnty. Dep’t of Human Res., 858 So.2d 274, 277 (Ala.Civ.App.2003). Because the juvenile court could have determined from the evidence before it that DHR had made reasonable efforts under the particular circumstances of this case, we discern no error in the juvenile court’s factual finding on this issue.
The mother next argues that the evidence was insufficient to support the trial court’s judgment terminating her parental rights. A juvenile court’s judgment terminating parental rights must be supported by clear and convincing evidence. Bowman v. State Dep’t of Human Res., *1213 534 So.2d 304, 305 (Ala.Civ.App.1988). “Clear and convincing evidence” is “ ‘Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala.Code 1975, § 6-ll-20(b)(4)). The juvenile court’s factual findings in a judgment terminating parental rights based on evidence presented ore tenus are presumed correct. K.P. v. Etowah Cnty. Dep’t of Human Res., 43 So.3d 602, 605 (Ala.Civ.App.2010).
The mother argues that the juvenile court’s determination that her “condition is unlikely to change in the foreseeable future,” § 12-15-319(a), Ala.Code 1975, was not supported by clear and convincing evidence. The mother points to her testimony that, at the time of the trial, she had allegedly obtained stable housing and had obtained employment. The mother also argues that her condition had been “steadily improving” from the time DHR became involved with the case. However, the juvenile court had sufficient evidence from which it could have determined that the mother’s condition had not improved and was unlikely to improve in the foreseeable future. The mother obtained housing, for which she was still dependent on other people, only one month before the termination-of-parental-rights trial, and her prospective employment was not scheduled to begin until a date after the conclusion of the trial. The mother had not notified DHR of her new living arrangements, and she had not visited the child since she had relocated to Dora. As we stated above, the juvenile court could have determined that, to the extent the mother may have allegedly improved her condition, those efforts were merely last-minute efforts undertaken in anticipation of the impending termination-of-parental-rights trial. J.D., 858 So.2d at 277. Moreover, the juvenile court “ ‘may consider the past history of the family as well as the evidence pertaining to current conditions.’ ” A.R. v. State Dep’t of Human Res., 992 So.2d 748, 760 (Ala.Civ.App.2008)(quoting T.B. v. Lauderdale Cnty. Dep’t of Human Res., 920 So.2d 565, 570 (Ala.Civ.App.2005)). In viewing the evidence before the juvenile court relating to the entire case, including the mother’s history as well as the mother’s current conditions, we cannot conclude that the juvenile court’s determination that the mother’s condition was unlikely to improve in the foreseeable future was not supported by clear and convincing evidence.

Conclusion

Because we discern no error in the juvenile court’s determination that DHR had made reasonable efforts to reunite the mother and the child, or in its determination that the mother’s condition was unlikely to change in the foreseeable future, we affirm the judgment of the juvenile court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, with writing.

. The father consented to the termination of his parental rights to the child. The father has not appealed the judgment of the juvenile court.

. In her statement of the issues, the mother also includes the issue whether viable alternatives existed to the termination of her parental rights. However, she does not provide any argument concerning that issue. Therefore, we need not consider it on appeal. See Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) ("Indeed, it has long been the law in Alabama that failure to argue an issue in brief to an appellate court is tantamount to the waiver of that issue on appeal.”).

. At no time in the juvenile court, either through testimony, or by questioning or cross-examination of witnesses, or by argument of counsel, did the mother assert that DHR had not made reasonable efforts to attempt to reunite the mother and the child. In fact, the mother, under questioning from the child's guardian ad litem, testified that she thought that DHR had tried to work with her and to provide services to her to attempt to reunite her with the child and that there was nothing else DHR could have done. The mother also did not file a postjudgment motion challenging the juvenile court’s finding that DHR had made reasonable efforts to reunite the mother with the child.
The long-established precedent in Alabama caselaw is that an appellate court cannot reverse a trial court’s judgment on an argument that was not first presented to the trial court. See Belcher v. Belcher, 18 So.3d 946, 948 (Ala.Civ.App.2009) (holding that a party had failed to preserve an argument for appellate review when that party had failed to argue the issue to the trial court "either at trial or in his postjudgment motion”); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (“[Tjhis Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal.”); and Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991)) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). As our supreme court has stated:
‘[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to;
... the rule promotes efficient trial proceedings; ... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to he right.
Birmingham Hockey Club, Inc. v. National Council On Comp. Ins., Inc., 827 So.2d 73, 80 (Ala.2002) (quoting Ex parte Elba Gen. Hosp., 828 So.2d 308, 314 (Ala.2001), quoting in turn Cantu v. State, 660 So.2d 1026, 1031-32 (Ala.1995) (Maddox, J., concurring in part and dissenting in part), quoting in turn State v. Applegate, 39 Or.App. 17, 21, 591 P.2d 371, 373 (1979)). Thus, arguably, we need not address the mother's argument on this issue on appeal. However, out of an abundance of caution, we will address the merits of the mother’s argument on this issue.

. The mother’s testimony that DHR had provided what services it could to assist her in reuniting with her child arguably led the juvenile court to commit what the mother now alleges was error — i.e., making a determination that DHR had made reasonable efforts to reunite the mother and the child. It is well settled that a party may not induce an error by the trial court and then attempt to secure a reversal based on that error.
" ‘A party may not predicate an argument for reversal on “invited error,” that is, "error into which he has led or lulled the trial court.” ' Atkins v. Lee, 603 So.2d 937, 945 (Ala.1992) (quoting Dixie Highway Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)). ‘That doctrine [of invited error] provides that a party may not complain of error into which he has led the court.’ Ex parte King, 643 So.2d 1364, 1366 (Ala.1993). ‘A party cannot win a reversal on an error that party has invited the trial court to commit.’ Neal v. Neal, 856 So.2d 766, 784 (Ala.2002). See also Liberty Nat’l Life Ins. Co. v. Beasley, 466 So.2d 935, 937 (Ala.1985); State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974).”
Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala.2003).