PITTMAN, Judge.
W.A. (“the father”) and D.M. (“the mother”) separately appeal from a judgment of the Calhoun Juvenile Court (“the juvenile court”) terminating their parental rights to N.A. (“the child”), a child born in January 2014. We reverse the trial court’s judgment and remand the cause.

Procedural History

In April 2015, the Calhoun County Department of Human Resources (“DHR”) petitioned the juvenile court to terminate the mother’s and the father’s parental rights to the child. Following a bench trial in August 2015, the juvenile court entered a judgment terminating their parental rights. The mother and the father each timely filed postjudgment motions, which were denied by operation of law when the juvenile court failed to rule on them within 14 days. See Rule 1(B), Ala. R. Juv. P. Thereafter, the mother and the father each timely appealed. A court reporter was present at trial, recorded the testimony, and transcribed the testimony for inclusion in the record on appeal; therefore, the parties’ appeals are properly before us pursuant to Rule 28(A)(c)(ii), Ala. R. Juv. P.

Factual Background

Charles Parker, a DHR caseworker, testified that, on August 14, 2014, he had responded to a report that a man who appeared to be intoxicated was trying to cross a public road in Anniston with a baby while there was heavy traffic on the road. When Parker arrived on the scene, he learned that the man who was the subject of the report was the father and that the baby involved in the incident was the child. Parker testified that the father had appeared to be intoxicated, that the father had been arrested for public intoxication, and that subsequent testing had indicated that the father had marijuana and cocaine in his system. The father testified that he had not been intoxicated during the August 14, 2014, incident and that he had merely been upset. Parker testified that he had not been able to locate the mother for approximately a week after the August 14, 2014, incident and that that incident had resulted in the juvenile court’s placing the child in DHR’s custody.
The mother and the father have never been married. DNA testing indicated that the father was indeed the father of the child, and he consented to an adjudication that he was the child’s father in the termination-of-parental-rights action. In addition to the child, the mother has given birth to six other children (“the other six children”), all of whom were fathered by men other than the father. The father does not have any other children.
The mother does not have custody of any of the other six children. She consented to the termination of her parental rights to one of the other six children, and her parental rights to another were involuntarily terminated in 2009.
In August 2012, the mother pleaded guilty to a felony charge of obstructing justice. She was sentenced to a year and a day in prison, but the prison sentence was suspended, and she was placed on probation for two years. Her probation was subsequently revoked, and she was incarcerated at Julia Tutwiler Prison from sometime in August 2013 until January 10, 2014. The mother admitted that both she and the father had engaged in acts of domestic violence before the juvenile court had placed the child in DHR’s custody.
*851 On October 16, 2014, DHR held an Individualized Service Plan (“ISP”) meeting (“the first ISP meeting”) that was attended by both the mother and the father. Under the heading “What Must Occur for DHR to No Longer Be Involved with Your Family,” the plan adopted at the first ISP meeting stated: “The care givers must demonstrate that they have protective capacity to meet the basic needs of the minor child. The care givers must be able to demonstrate that they can deal with life management without depending on illegal drugs to help them cope.” With regard to the parents’ substance abuse, the plan adopted at the first ISP meeting provided that the parents would receive random drug screens and random hair-follicle tests from authorized providers as necessary. The plan further stated that “[the parents] will be placed on the same color [i.e., testing schedule] due to transportation issues.” (Emphasis added.) In addition, the plan adopted at the first ISP meeting provided that the parents would “have a drug assessment completed through IRC Drug Court to identify if there are any drug addiction and/or any mental health issues and follow all recommendations,” The plan adopted at the first ISP meeting also provided that the parents would have weekly supervised visitation at DHR’s offices and that DHR would provide transportation for the child to and from the visits. Under the heading “Goals Currently Identified with No Steps/Services; Steps/Services to be Addressed in the Future,” the plan adopted at the first ISP meeting stated: “[The father] and [the mother] will maintain stable housing and income in order to provide for [the child’s] basic needs.”
Initially, the parents lived together; however, at some point they both began living in shelters. The mother subsequently began living with her grandfather and was living with him when the termination-of-parental-rights action was tried. The father was still living in a shelter when the action was tried.
The mother failed all of her drug tests and never underwent a drug assessment. The father underwent a drug assessment and was referred to the drug court. After he failed two drug tests, the drug-court judge ordered the father to participate in a drug-rehabilitation program at New Directions, a private provider of drug testing and drug-rehabilitation services. The father testified that he had begun a drug-rehabilitation program at New Directions but had not completed the program because he did not have transportation to and from New Directions. He further testified that he planned to resume participating in the program shortly after the trial and that he intended to complete it.
On March 3, 2015, DHR held another ISP meeting (“the second ISP meeting”), which was not attended by the parents. At the second ISP meeting, the permanency plan was changed from reuniting the child with the parents to termination of the parents’ parental rights and adoption of the child by a relative or other unidentified person. Following the second ISP meeting, DHR ceased all drug testing of the parents, ceased visiting them monthly, and reduced their visitation with the child from once per week to twice per month.
The mother testified that she had not been regularly employed since the child had been placed in DHR’s custody. The father testified that he was receiving Social Security disability benefits for an injury to his left hand and that he was not regularly employed, although he sometimes worked “off the books” at a car wash.

Standard of Review

“A juvenile court’s judgment terminating parental rights must be supported by clear and convincing evidence. Bowman v. State Dep’t of Human Res., *852 534 So.2d 304, 305 (Ala.Civ.App.1988). ‘Clear and convincing evidence’ is ‘ “[evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’ L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala.Code 1975, § 6-11-20(b)(4)).”
K.P. v. Etowah Cty. Dep’t of Human Res., 43 So.3d 602, 605 (Ala.Civ.App.2010).
“In reviewing factual findings in termination-of-parental-rights judgments, this court has a narrow standard of review that allows us to disturb those findings only when they are so unsupported by the evidence as to be plainly and palpably wrong. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007). If a fact-finder reasonably could have been clearly convinced from the evidence in the record that a parent is unwilling or unable to discharge his or her parental responsibilities to and for the child, this court may not reverse a judgment terminating parental rights arising from ore tenus proceedings in a termination-of-parental-rights case. See J.B. v. DeKalb County Dep’t of Human Res., 12 So.3d [100] at 111 [ (Ala.Civ.App.2008) ].”
M.H. v. Jefferson Cty. Dep’t of Human Res., 42 So.3d 1291, 1294 (Ala.Civ.App. 2010).

Analysis

The Father’s Appeal

The father argues, among other things, that the juvenile court erred in terminating his parental rights because, he says, DHR failed to make reasonable efforts to reunite him with the child. The undisputed evidence indicates that DHR knew that the father did not own an automobile and that, despite that knowledge, it never offered the father assistance in traveling to and from visitation or to and from New Directions where he was participating in a drug-rehabilitation program. The DHR employee who supervised the parents’ visitation with the child testified that she knew the father had missed some of his visits with the child because he did not have transportation and that he had been late to some of his visits because he had had to walk to the visitation site. The ISP plan adopted after the first ISP meeting noted that there were transportation issues and made provision for transportation of the child to and from visitation but made no provision for transportation of the parents to and from visitation. Nonetheless, despite their lack of transportation, the parent^ attended the majority of their scheduled visits with the child. The father testified that his lack of transportation prevented him from completing the drug-rehabilitation program at New Directions.
Moreover, although DHR had required the father to obtain and maintain stable housing and employment as a condition of being reunited with the child, DHR never offered the father assistance in obtaining suitable housing or suitable employment. Furthermore, the DHR caseworker assigned to the child’s case testified that, although DHR had in-home services it could provide parents, it had never offered the father such services.
When the juvenile court entered its initial order removing the child from the parents’ custody and placing him in DHR’s custody, DHR had a duty under the Alabama Juvenile Justice Act, Ala.Code 1975, § 12-15-101 et seq., to make reasonable efforts to reunite the child with the father. See Ala.Code 1975, § 12-15-312(b). Those reasonable efforts that DHR was required to make included efforts to rehabilitate the father. D.M. v. Limestone Cty. Dep’t of Human Res., 164 So.3d 1164, 1170 (Ala. *853 Civ.App.2014). Whether DHR’s efforts had been reasonable and whether those efforts had succeeded were questions of fact to be determined by the juvenile court. Id. In this case, the juvenile court found that DHR’s efforts had been reasonable. In reviewing that factual determination, “this court has a narrow standard of review that allows us to disturb those findings only when they are so unsupported by the evidence as to be plainly and palpably wrong.” M.H. v. Jefferson Cty. Dep’t of Human Res., 42 So.3d at 1294. DHR identified the causes of the father’s inability to care for the child properly as (1) his use of illegal drugs, (2) his failure to maintain stable housing, and (3) his failure to maintain a stable income. In order to address his use of illegal drugs, DHR provided the father with drug testing and required him to undergo a drug assessment and follow all recommendations made in the drug assessment. However, DHR ceased providing drug testing in February 2015, shortly before it made the decision to seek termination of the father’s parental rights. The father underwent the drug assessment and followed the recommendation that he participate in the drug court’s program. However, when he subsequently failed two drug tests, the drug-court judge ordered the father to participate in a drug-rehabilitation program at New Directions. The father began the drug-rehabilitation program at New Directions but stopped participating before he completed the program because, he testified, he did not have transportation to and from New Directions. Although he had not completed that drug-rehabilitation program, the juvenile court did not have any evidence before it indicating that the father had used illegal drugs since February 2015 because DHR had ceased testing him that month and because DHR had not made its customary monthly visits to his place of abode. DHR never offered any services whatsoever to address the father’s failure to maintain stable housing and a stable income. Because DHR failed to provide the father with transportation assistance, because DHR ceased all efforts to assist the father with overcoming his drug-addiction problem six months before the trial, and because DHR made no effort whatsoever to rehabilitate the father with respect to his housing and income problems, we conclude that the juvenile court’s finding that DHR made reasonable efforts to reunite the child with the father is so unsupported by the evidence as to be plainly and palpably wrong. Therefore, we reverse the juvenile court’s judgment insofar as it terminated the father’s parental rights. Because the father’s failure-to-make-reasonable-efforts argument is dis-positive, we pretermit discussion of his other arguments.

The Mother’s Appeal

DHR was not under a duty to make reasonable efforts to reunite the child with the mother because her parental rights to one of the child’s siblings had been involuntarily terminated. See Ala. Code 1975, § 12-15-312(c) (“Reasonable efforts shall not be required to be made with respect to a parent of the child if the juvenile court has determined that the parental rights of the parent to a sibling of the child have been involuntarily terminated.... ”). However, because we are reversing the judgment insofar as it terminated the father’s parental rights and, therefore, the father may prove to be a suitable custodian who could supervise visitation of the mother and the child, which would be a viable alternative to terminating the mother’s parental rights, we also reverse the judgment insofar as it terminated the mother’s parental rights, see, e.g., K.P. v. Etowah Cty. Dep’t of Human Res., 43 So.3d at 605 (“ ‘A juvenile court is required to apply a two-pronged test in determining whether to terminate parental *854 rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights’ ” (quoting B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004) (emphasis added))), and we remand the cause for further proceedings consistent with this opinion.
2141034—REVERSED AND REMANDED.
2141047—REVERSED AND REMANDED.
THOMPSON, P.J., and DONALDSON, J., concur.
MOORE, J., concurs specially.
THOMAS, J., dissents, with writing.