This is a termination-of-parental-rights case. F.I. ("the father") is the father of M.P. ("the child"), a 10-year-old girl who has been in the legal custody of the Department of Human Resources ("DHR") since her birth in March 1997. The father's paternity of the child was not established until 2004, after a petition for the termination of his parental rights and those of L.B. ("the mother") had been filed in July 2004. The father was served by publication, although he had been located by the child-support division of DHR in relation to the paternity testing of two of the mother's other children.
The mother is mildly mentally retarded. DHR worked very hard to reunite the mother with her children, but to no avail. The mother simply could not maintain any progress she had made in meeting the basic needs of the children without constant, daily aid by DHR workers. The mother and the father married in 2002. The father left the mother at some unidentified point, however, citing as a reason his inability to "help" the mother and the drug dealing that occurred at the home. According to Corrine Burt, the DHR case-worker assigned to the case, the mother indicated shortly after the marriage that she and the father had separated because she had not known he had a criminal record.
The father testified about his criminal record at the termination trial in 2006. Although at one point he said that he had served one year of jail time for assault, he later said that he was not convicted of *Page 971 
assaulting a police officer. The father's testimony is disjointed, and it is unclear whether he was charged with two separate assaults and that one concerning an assault on a police officer was dismissed or whether he was convicted of only one assault, that being an assault on a police officer, and that he served one year for that conviction. The father also related having been convicted of possession of a forged instrument. The father admitted that he had been convicted of escape in the second degree, a class C felony, on three occasions: once in 1997, once in 1998, and once in 2001. He said that he had been on probation since 1998 and that he would be off of probation in March 2007.
The father admitted that he had failed to contact DHR regarding the child and that he had paid no support to DHR or to the child's foster parent. He said that he had paid money to the mother at times and possibly directly to the child at times; however, as noted above, the mother has not had custody of the child except on a trial basis since 1997. In addition, the father testified about his sporadic contact with the child. He said that he had seen the child at times when the child had visitation with the mother. He also said that he had seen the child on occasion at the home of the foster mother; however, he noted that those visits were conducted at his vehicle because, he said, the foster mother did not want him to come inside her home. The father also said that the mother had told him that Burt, the DHR caseworker, did not want him around the children. The father had last seen the child in October 2005.
At the time of the termination trial in June 2006, the father was a self-employed mechanic and welder. He had worked in the 1990s at a broom-making facility called "Crystal Lake" and at a place called "Simmons." He testified at trial that he was expecting to start work the following week at a place he called "Zone 41." The father lives with his mother, but the tape from which the record was transcribed was not clear and the transcript indicates that the location of their residence was "unintelligible."
Burt testified that she had never seen the father in the home with the mother despite their being married. In fact, Burt said that she had had little, if any, contact with the father during the years the child had been in DHR's custody. She admitted that she had never asked the mother to have the father present at any visitations. She said that the father had never contacted DHR concerning the child and that he had never indicated any interest in acting as a father to the child. Burt testified that DHR knew that the father had a criminal record and that he had "been in and out of jail"; however, Burt was not aware of what the father had been convicted of or why he had been in and out of jail. Although Burt said that she did not think that a criminal record alone is always a sufficient reason to terminate parental rights, it was evident from her testimony that the father's criminal history and his lack of involvement and interest in the child led to DHR's decision not to attempt to rehabilitate the father as a custodian for the child.
The father testified regarding his failure to ever contact DHR about seeking custody of the child or otherwise exercising any aspect of his parental rights or responsibilities. He basically admitted that he had not taken any action to protect the child or her siblings when he left them with the mother, even when he thought the environment was dangerous for them.[1] He also *Page 972 
admitted that he had not contacted DHR about seeking custody of the child or to offer his mother or sister as alternative placements for the child because he thought the child would be returned to the mother eventually. When pressured further about why he had failed to act as a responsible parent would, the father replied, "she [apparently the mother] was going to tell me Burt doesn't want you to have anything to do with the kids." The father said that had DHR contacted him about visitation he would have responded. He said that if he were given the opportunity by DHR he would like to develop a relationship with his child and would take parenting classes and offer financial and emotional support to the child. He said that he was now seeking custody of the child.
The juvenile court entered a judgment terminating the parental rights of both the mother and the father. In that judgment, the court specifically found that "the natural parents are unable and unwilling to discharge their responsibilities to and for said child and it is unlikely that such conditions will materially change in the foreseeable future" and that "[DHR] has made reasonable efforts toward rehabilitation and such efforts have failed, primarily due to the fault of the parents." The father appeals the judgment terminating his parental rights, arguing that DHR did not present sufficient evidence, i.e., clear and convincing evidence, that he was unable and unwilling to discharge his responsibilities as a parent.
 "The right to maintain family integrity is a fundamental right protected by the due process requirements of the Constitution. Pursuant to this right, Alabama courts recognize a presumption that parental custody will be in the best interests of a child. This prima facie right of a parent to custody of his or her child can only be overcome by clear and convincing evidence that permanent removal from the parent's custody would be in the child's best interest, but the primary consideration in any proceeding to terminate parental rights is always the best interests and welfare of the child. In making that determination, the court must consider whether the parent is physically, financially, and mentally able to care for the child. If the court finds from clear and convincing evidence that the parent is unable or unwilling to discharge his or her responsibilities to and for the child, his or her parental rights can then be terminated, pursuant to § 26-18-7(a), Ala. Code 1975. . . ."
Bowman v. State Dep't of Human Res.,534 So.2d 304, 305 (Ala.Civ.App. 1988) (citations omitted). The juvenile court's factual findings based on evidence presented ore tenus in a judgment terminating parental rights are presumed correct.R.B. v. State Dep't of Human Res., 669 So.2d 187
(Ala.Civ.App. 1995). The judgment terminating parental rights based on those findings will be reversed only if the record demonstrates that the decision is unsupported by the appropriate quantum of evidence, i.e., clear and convincing evidence, and is plainly and palpably wrong. Exparte T.V., 971 So.2d 1, 4-5 (Ala. 2007).
To terminate parental rights on a petition by the state, the juvenile court must first determine from clear and convincing evidence that the child or children are dependent. S.F. v.Department of Human Res., 680 So.2d 346 (Ala.Civ.App. 1996). The court must then determine *Page 973 
that there exists no alternative to termination. L.A.G.v. State Dep't of Human Res., 681 So.2d 596
(Ala.Civ.App. 1996).
A court may terminate parental rights when "the parents of [the] child are unable or unwilling to discharge their responsibilities to and for the child . . . and . . . such conduct or condition is unlikely to change in the foreseeable future." Ala. Code 1975, § 26-18-7(a). Sections 26-18-7(a)(1)-(6) and (b)(1)-(4) list factors a trial court must consider in making the difficult decision whether to terminate parental rights. Among those factors to be considered are whether a parent has abandoned the child, § 26-18-7(a)(1), and whether a parent has been convicted of and imprisoned for a felony. § 26-18-7(a)(4). In addition, when the child is not in the custody of a parent, the court shall also consider the failure of a parent to pay support for the child when the parent is able to do so, § 26-18-7(b)(1), the failure of a parent to maintain consistent contact and communication with the child, § 26-18-7(b)(3), and that the parent has failed to maintain regular visits with the child in violation of a plan devised by DHR. § 26-18-7(b)(2).
DHR argues that the inaction by the father in this case amounts to abandonment such that reasonable efforts to reunite the child with the father were not required. See
§ 26-18-7(a)(1) (providing that, if the parents have abandoned the child, "proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents"). Abandonment is defined as "[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent." Ala. Code 1975, § 26-18-3(1). As DHR argues, some of the facts established at trial could support a determination that the father had abandoned the child. However, the juvenile court found that DHR had made reasonable efforts to rehabilitate the father and that those efforts had failed. As the father argues, the juvenile court's finding that DHR had made reasonable efforts is unsupported by the record, which reveals that DHR had little if any contact with the father.
We typically assume that a juvenile court makes those findings necessary to support its judgment. AA v. Cleburne CountyDep't of Human Res., 912 So.2d 261, 264
(Ala.Civ.App. 2005). In the present case, however, we are faced with a judgment in which a finding contrary to the one we might assume in support of the judgment was, in fact, made. We have faced this situation before. See S.A.B. v. Mobile CountyDep't of Human Res., 845 So.2d 825 (Ala.Civ.App. 2002).
 "In the present case, the evidence might support a finding that S.A.B. had abandoned his child. S.A.B. neither supported nor requested visitation with D.B. during the six-month period between September 8, 2000, and March 7, 2001. However, the trial court apparently did not rely on the abandonment exception to the reasonable-efforts requirement because its judgment recites satisfaction of the reasonable-efforts requirement. DHR contends that we must affirm the juvenile court's judgment because (1) according to Ex parte State Department of Human Resources, 624 So.2d 589, 593 (Ala. 1993), a juvenile court is not required to make specific written findings in a termination-of-parental-rights case, (2) this court must presume that the juvenile court made those findings necessary to uphold its *Page 974 
judgment, and (3) the evidence would support a finding of abandonment.
 "In the absence of the recitation in the juvenile court's judgment that the reasonable-efforts requirement had been satisfied in this case, we could affirm the judgment. However, because the court specifically determined that DHR had `exercised all reasonable efforts to prevent removal, to promote reunification, and to prevent and avoid termination of parental rights' we are left in doubt as to the import of the juvenile court's order. As it now reads, the order could be construed in either of two ways: (1) that S.A.B. had not abandoned the child but that DHR had made the required effort to rehabilitate him, or (2) that the trial court had simply overlooked the abandonment exception to the reasonable-efforts requirement. We, therefore, remand this cause to the juvenile court with instructions to make a specific finding as to whether S.A.B. abandoned the child. If the court determines that an abandonment occurred, it need not determine whether DHR engaged in any rehabilitative efforts. See
§§ 26-18-7(a)(1) and 26-18-7(c). If, on the other hand, the court determines that S.A.B. did not abandon the child, then the court must make a further determination regarding DHR's efforts to rehabilitate S.A.B."
S.A.B., 845 So.2d at 828-29.
In accordance with S.A.B., we remand this cause to the juvenile court for it to determine whether the father has abandoned the child. If it concludes that the father did abandon the child, the juvenile court need not consider whether DHR made any efforts toward rehabilitating the father or reuniting the father and the child. However, if the juvenile court is not convinced that the father abandoned the child, it must make a further determination regarding DHR's efforts to rehabilitate the father or to reunite the father and the child. The juvenile court is ordered to make a return to this court within 28 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 On Return to Remand
THOMAS, Judge.
This is a termination-of-parental-rights case. On April 6, 2007, we remanded this action to the Dallas Juvenile Court and instructed that court to determine whether F.I. ("the father") had abandoned M.P. ("the child"). See F.I. v. State Dep'tof Human Res., 975 So.2d 969 (Ala.Civ.App. 2007). The trial court, in compliance with our instructions, has filed its return with this court. It has determined that the father did abandon the child and, thus, that the Department of Human Resources ("DHR") was not required to make any efforts toward rehabilitating the father or reuniting the father and the child.
The father has shown a grave lack of concern for the child. Although the father had married and lived with the mother, he did not seek to establish paternity of the child (or of the mother's other children, who she asserted he had also fathered) until DHR sought to collect child support from him. Despite his concern and discomfort about the mother's living conditions — conditions that he said had motivated him to move out of their home — he did nothing to seek custody of the child, instead opting to wait for the mother to succeed in having the child returned to her care. Despite his knowledge of the DHR caseworker's name and DHR's long-term involvement with this case, he never *Page 975 
sought to establish visitation or to pay support for the child. It also appears that the father did not apprise DHR of his whereabouts so that he could be contacted by the caseworker. Thus, we conclude that the trial court correctly determined that the father's inaction amounted to an abandonment of the child, which would permit the trial court to terminate his parental rights even though DHR did not attempt to rehabilitate the father or to reunite the father with the child.See Ala. Code 1975, § 26-18-7(a)(1) (permitting the termination of parental rights when "the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents").
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] Because the child has never lived full-time with the mother, we assume that the father left the child and her siblings with the mother during an extended visitation or during a trial reunification with the mother.