MOORE, Judge.
K.J. (“the mother”) appeals from a judgment of the Etowah Juvenile Court (“the juvenile court”) terminating her parental rights to N.J. (“the child”), who was born on July 10, 2004, and awarding custody of the child to S.P., the child’s maternal great-grandmother (“the great-grandmother”), and J.P., the child’s maternal great-grandfather (“the great-grandfather”) (hereinafter sometimes referred to collectively as “the great-grandparents”). We reverse.

Procedural History

On April 5, 2010, the juvenile court awarded custody of the child to the great-grandparents, who were divorced; the child resided with the great-grandmother and visited with the great-grandfather every other weekend. On September 21, 2010, the great-grandparents petitioned the juvenile court to terminate the mother’s parental rights. On that same date, the great-grandparents moved for an ex parte restraining order against the mother and against D.J., the child’s maternal grandmother (“the grandmother”); in that motion, the great-grandparents asserted that they had reason to fear for their safety because of certain actions taken by the mother and the grandmother. The juvenile court issued the requested restraining order. On September 29, 2010, the child’s unknown father was served with the pending petition to terminate his parental rights to the child by publication.[1]
The juvenile court held a hearing on December 8, 2010, at which ore tenus evidence was presented, on the great-grandparents’ petition to terminate the mother’s parental rights. The hearing was continued and completed on January 5, 2011. On January 12, 2011, the juvenile court entered its judgment terminating the mother’s parental rights. In its judgment, the juvenile court found that the mother’s *996 lifestyle was not conducive to raising a child and that she had not changed her behavior since the child’s birth or since custody of the child had been transferred to the great-grandparents. The juvenile court noted that, since the child’s birth in 2004, the mother had engaged in sexual relationships with at least four men and had cohabited with at least three of those men, which the juvenile court noted must be confusing to the child. The juvenile court also found that the mother had been diagnosed with a mental illness and that, at the time of the termination hearing, she was not taking the medication that had been prescribed for that illness; that the child was under the care of a psychiatrist and was not meeting his developmental milestones; and that the child had been subjected to multiple moves and had a right to stability. The juvenile court also found that no viable alternatives to termination existed. On January 26, 2011, the mother filed her notice of appeal.

Standard of Review

With regard to reviewing a judgment in a termination-of-parental-rights case, this court has stated:
“This court’s standard of appellate review of judgments terminating parental rights is well settled. A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong. See, e.g., F.I. v. State Dep’t of Human Res., 975 So.2d 969, 972 (Ala.Civ.App.2007). Under express direction from our supreme court, in termination-of-parental-rights cases this court is ‘required to apply a presumption of correctness to the trial court’s findingfs]’ when the trial court bases its decision on conflicting ore ten-us evidence. Ex parte State Dep’t of Human Res., 834 So.2d 117, 122 (Ala.2002) (emphasis added). Additionally, we will reverse a juvenile court’s judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence. F.I., 975 So.2d at 972.”
J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007) (footnote omitted).

Analysis

The mother raises several issues on appeal,[2] but we find the dispositive issue to be whether the juvenile court correctly found that no viable alternative existed to terminating the mother’s parental rights. In resolving that issue, we are instructed by our supreme court’s recent opinion in Ex parte A.S., 73 So.3d 1223 (Ala.2011), in which the supreme court held that termination of parental rights would be premature when a child is in the safe custody of a nonparent, that nonparent can adequately supervise visitation between the parent and the child, and the parent is making some progress toward rehabilitation. We conclude that the facts of this case sufficiently mirror those in A.S. so as to require this court to hold that the juvenile *997 court erred in terminating the parental rights of the mother.
In Ex parte AS., supra, our supreme court reversed this court’s no-opinion order of affirmance of a judgment terminating a mother’s parental rights because it found that a viable alternative to termination existed. Id. at 1230. The supreme court recognized that the grandmother in that case held sole custody of the child, that the mother’s visitation with the child was at the grandmother’s discretion, and that the grandmother had testified that she was not opposed to the mother’s regaining custody in the future if the mother was “behaving.” Id. at 1229. The supreme court concluded:
“The mother has maintained limited contact with the child through telephone calls to the grandmother and has provided a small amount of support for the child. The evidence before the juvenile court indicated that the mother is in a treatment program in prison for her kleptomania and is apparently behaving while she is incarcerated because she has earned good-time credit. The mother is satisfied with the grandmother’s care of the child as evidenced by the mother’s testimony that she would not mind if the grandmother adopted the child but that she does not want her parental rights to the child terminated. The grandmother’s maintaining custody of the child and having the ability to determine and supervise the mother’s visitation with the child is a viable alternative to termination of the mother’s parental rights while the mother is making progress towards rehabilitation. Thus, the juvenile court’s decision to terminate her parental rights appears to be premature.
“ ‘ “[T]he termination of parental rights is a drastic measure, and we know of no means by which those rights, once terminated, can be reinstated. The evidence in [this] case[] ‘does not rise to the level of being so clear and convincing as to support termination of the parental rights of the mother, such action being the last and most extreme disposition permitted by statute.’ ” ’
“D.O. v. Calhoun County Dep’t of Human Res., 859 So.2d 439, 445 (Ala.Civ.App.2003)(quoting V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998)).”
Ex parte A.S., 73 So.3d at 1229-30.
As in Ex parte A.S., the child at issue in this case is in the custody of the great-grandparents who, according to their testimony, had been awarded complete discretion as to the mother’s visitation. As in Ex parte A.S., the mother in this case has shown some progress. The record shows that, at the time of the termination hearing, the mother had been attending counseling, had found employment, and was engaged to be married. Thus, it appears that she was moving in the direction of stability. We also note that the juvenile court’s judgment terminating the mother’s parental rights was entered only nine months after the child had been removed from the mother’s custody. The great-grandparents also testified that they were not opposed to the mother’s regaining custody of the child if she could demonstrate stability and could provide adequately for the child. Therefore, as in Ex parte A.S., we conclude that the juvenile court’s decision to terminate the mother’s parental rights was premature.
For the above-stated reasons, we reverse the juvenile court’s judgment terminating the mother’s parental rights. We remand this case to the juvenile court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*998 PITTMAN, J., concurs.
THOMAS, J., concurs in part and concurs in the result, with writing, which BRYAN, J., joins.
THOMPSON, P.J., concurs in the result, without writing.

. At the termination hearing, the mother asserted that N.J.'s father is Jo.Hu. and that Jo.Hu. had died in a work-related accident in July 2010. The mother and Jo.Hu. had never married, and Jo.Hu.'s paternity had not been established before his death.

. We do not address the mother’s contention that her visitation should not be at the discretion of the great-grandparents. The judgment establishing that condition was entered in a separate proceeding on April 5, 2010, and the mother did not timely appeal from that judgment. See Rule 1(B), Ala. R. Juv. P. (addressing time in which to appeal from orders and judgments entered by the juvenile court). We also do not address the mother's argument that the juvenile court erred in entering an order denying her request for pendente lite visitation. The mother failed to timely file a petition for a writ of mandamus relating to that interlocutory order, which is our only method of review of such an order. See Rule 21(a)(3), Ala. R.App. P. (addressing mandamus relief), and P.B. v. P.C., 946 So.2d 896 (Ala.Civ.App.2006).