THOMAS, Judge.
On February 1, 2010, D.J. (“the grandfather”) and G.J. (“the grandmother”) (sometimes collectively referred to as “the grandparents”) filed a petition to terminate the parental rights of L.M.W. (“the mother”) to her daughter K.A.J. (“the child”);[1] the case was assigned number JU-07-291.02. The Etowah Juvenile Court conducted a trial on the petition on December 9, 2011. On January 17, 2012, the juvenile court entered a judgment terminating the parental rights of the mother.[2] The mother filed a timely appeal from the judgment.
In 2006, the Etowah County Department of Human Resources (“DHR”) became involved with the mother and her other child, S.N.B., whose case was assigned case number JU-06-0079.0S. A case involving the child was instituted in 2007 and was assigned case number JU-07-291.01. By an order dated July 10, 2008, the juvenile court awarded the grandparents temporary custody of the child and awarded the mother visitation rights in case number JU-07-291.01. The mother was ordered to provide support for the child, although no specific amount was set out in the order. The mother had supervised visitation with both S.N.B. and the child through DHR from September 2008 through December 2009.
On December 1, 2009, after a trial, the mother’s parental rights as to S.N.B. were involuntarily terminated in case number JU-06-0079.03. She appealed the judgment terminating her parental rights to S.N.B., and this court affirmed that judgment. L.M.W. v. Etowah Cnty. Dep’t of Human Res., 55 So.3d 1204 (Ala.Civ.App.2010). The juvenile court then entered an order in case number JU-07-291.01 on December 14, 2009, stating that the mother’s visitation with the child would be at *222 the discretion of the grandparents[3] and relieved DHR of the responsibility of providing supervised visitation.
In its January 17, 2012, judgment, the juvenile court terminated the parental rights of the mother to the child. The trial court considered the factors to consider when determining whether to terminate a parent’s parental rights, set forth in Ala.Code 1975, § 12-15-319, specifically subsections (a)(8), (a)(9), and (a)(11). The juvenile court found that the mother’s parental rights to S.N.B. were terminated on December 1, 2009, see § 12-15-319(a)(8) (“That parental rights to a sibling of the child have been involuntarily terminated.”), that the mother had paid only $80 in child support to the grandparents for the support of the child, see § 12-15-319(a)(9) (“Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of support for the child, where the parent is able to do so.”), and that the mother had had a total of three day-time visits with the child since December 2009, had had no overnight visits with the child since December 2009, and had last seen the child at Christmas 2010. See § 12-15-319(a)(ll) (“Failure by the parents to maintain consistent contact or communication with the child.”).
Furthermore, the juvenile court concluded that “the only [possible] alternative [to termination of parental rights] is to maintain the status quo. However, this [would provide] very little, if any benefit to the child.” However, the court concluded that terminating the mother’s parental rights would secure a benefit to the child, because, the juvenile court concluded, if adopted by the grandparents, the child would become eligible to draw from the grandfather’s Social Security benefits and become eligible for insurance coverage through the grandfather. Because it found clear and convincing evidence satisfying three grounds for termination set out in § 12-15-319 and no viable alternative to termination, the juvenile court terminated the parental rights of the mother as to the child.
Under this court’s standard of appellate review of judgments terminating parental rights, “we will reverse a juvenile court’s judgment terminating parental rights only if the record shows that the [findings of fact in that] judgment [are] not supported by clear and convincing evidence.” J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007)(citing F.I. v. State Dep’t of Human Res., 975 So.2d 969, 972 (Ala.Civ.App.2007)). This court has stated that clear and convincing evidence is
“ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to *223 the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’ ”
L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002)(citing Ala.Code 1975, § 6-11-20(b)(4)).
“A juvenile court’s factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong.” J.C., 986 So.2d at 1183. Therefore, we will “presume that the trial court’s factual findings in this case were correct, and we will not reverse the trial court’s judgment unless the record demonstrates that the judgment is not supported by clear and convincing evidence.” J.C., 986 So.2d at 1186.
When the petitioner seeking termination of parental rights is a nonparent, this court has stated:
“ ‘A juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alternatives to a termination of parental rights.’ ”
J.C., 986 So.2d at 1186 (quoting B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004), citing in turn Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990)).
“When reviewing a judgment terminating parental rights, this court must determine whether the fact-finder reasonably could have determined that clear and convincing evidence established such facts.” S.U. v. Madison Cnty. Dep’t of Human Res., 91 So.3d 716, 723 (Ala.Civ.App.2012). Section 12-15-319(a) provides, in pertinent part:
“If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents. In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
[[Image here]]
“(8) That parental rights to a sibling of the child have been involuntarily terminated.
“(9) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of support of the child, where the parent is able to do so.
[[Image here]]
“(11) Failure by the parents to maintain consistent contact or communication with the child.”
On appeal, the mother argues that the juvenile court’s decision to terminate her parental rights was not based upon clear and convincing evidence. The mother also argues that the juvenile court did not properly consider all viable alternatives to termination of her parental rights. Because we conclude that the mother’s second argument is dispositive of the present appeal, we pretermit discussion of her first argument. See L.R. v. C.G., 78 So.3d 436, 443 (Ala.Civ.App.2011) (citing Favorite Mkt. Store v. Waldrop, 924 So.2d 719, 723 (Ala.Civ.App.2005) (stating that this court *224 would pretermit discussion of further issues in light of dispositive nature of another issue)).
The mother argues that the evidence at trial does not support the juvenile court’s conclusion that no viable alternatives to permanent termination of her parental rights existed. She argues that visitation or joint custody was a less drastic, appropriate, and available alternative to termination of her parental rights in this situation. She testified that there remains a bond between her and the child and that she desires to visit with and care for the child. She said that the child expresses love for her and that, although the grandmother had not permitted it, the child had asked the mother to attend her softball games and her school functions.
The mother testified that she has lived at the same residence for six years and is not behind on rent payments. She has a room in her home for the child. The mother also testified that she has been employed at her job as a waitress for two and a half years and also works part time at another restaurant. The mother had previously served in the Navy for three years and was honorably discharged. The mother has a degree as an X-ray technician, but she testified that she is unable to obtain an X-ray technician job because of the lack of jobs in her area.
The mother explained that she had desired to visit with the child more frequently, but she said that the grandmother had allowed her only three visits with the child. According to the mother and the grandmother, the mother telephoned the child once a week until July 2010, when the grandmother restricted the mother’s telephone contact with the child to once a month. The grandmother admitted that she did not communicate with the mother about the child.
The grandparents testified that if the mother’s parental rights are terminated, they intend to adopt the child. The grandparents further testified that if they adopt the child, the child would become eligible to draw from the grandfather’s Social Security benefits and the child would be covered under the grandfather’s insurance. The grandmother stated that the child does not want more visitation with her mother, although she contradicted herself when she admitted in her testimony that she had specifically told the child “no” when the child requested that the mother be permitted to attend her softball games. When questioned regarding her refusal to permit the mother to have visitation with the child or to attend the child’s school and extracurricular activities, the grandmother said that the mother “has a mouth on her” and that the grandmother did not feel comfortable when the mother was present. She also indicated that she did not want the child to have the mother’s telephone number because she did not want the child to be able to contact the mother when the grandparents disciplined the child. The grandfather testified that he thinks it is important that the child have a relationship with her mother and that, to an extent, it is important that the mother remain a part of the child’s life.
The evidence presented at trial established that the mother loves the child and wishes to be a part of the child’s life. The evidence also established that the child desires the mother to be a part of her life. As this court has explained:
“‘[I]f, notwithstanding the unfitness of a parent, there remains a significant emotional bond between a child and an unfit parent, and it has been demonstrated that some alternative-placement resource would allow the child to visit periodically with the unfit parent so as to reap the benefit of partially preserving that relationship without incurring the harm of the child being raised on a *225 day-to-day basis by an unfit parent, the court would be required to weigh the advantage of that arrangement against the advantage of termination and placement for adoption with permanent fit parents, and to decide which of these alternatives would be in the child’s best interest.’ ”
C.M. v. Tuscaloosa Cnty. Dep’t of Human Res., 81 So.3d 391, 397 (Ala.Civ.App.2011) (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion)).
As we have noted before, we are aware that in the past we have rejected the argument that maintaining the status quo would be a viable alternative to termination of parental rights:
“ ‘[W]e note that we have previously rejected [maintenance of the status quo as a viable alternative] when grounds for termination exist and the situation is such that, in the foreseeable future, reunification will not be possible. See K.A.P. v. D.P., 11 So.3d 812, 820 (Ala.Civ.App.2008) (rejecting maintenance of the status quo when it appeared that potential reunification would be at least 10 years in the future and commenting that, in order to achieve stability and continuity for children, “appellate courts generally hold that maintaining an indefinite custody arrangement with a third party is not in the best interest of the child”); B.J.C. v. D.E., 874 So.2d 1109, 1118 (Ala.Civ.App.2003), overruled on other grounds, F.G. v. State Dep’t of Human Res., 988 So.2d 555 (Ala.Civ.App.2007) (rejecting the father’s argument that “maintaining the situation the children had been in for the six years before the termination hearing by leaving them to be raised by family members” was a viable alternative to termination when the father had failed to consistently support or visit with the children and his situation was unlikely to change in the foreseeable future); A.N.S. v. K.C., 628 So.2d 734, 735 (Ala.Civ.App.1993) (rejecting the maintenance of the status quo as an alternative to termination and noting that the father was expecting to be released from prison in seven years but that “[t]he maternal aunt and uncle were willing to adopt the children to give them a feeling of permanency and security”).’ ”
L.R., 78 So.3d at 443 (quoting L.T. v. W.L., 47 So.3d 1241, 1249 (Ala.Civ.App.2009)). We are also aware that the intention underlying the grandparents’ desire to adopt the child is to provide the child with a financial resource from the grandfather’s Social Security benefits and insurance. Although the grandparents’ intentions are commendable, we cannot agree that the parental rights of the mother should be terminated for such reasons. What we said in L.R. applies here as well:
“In a case such as this one, where the child[ ] ha[s] been placed in the permanent custody of a relative, we are not concerned with ‘an indefinite custody arrangement with a third party’ or a lack of stability for the child[ ]. The child[ ] [is] in a stable and loving placement. However, the evidence is clear that the child[ ] and the mother have a relationship that both the child[ ] and the mother desire to preserve .... In addition, the [grandfather] testified [that it was important for the child to have continued contact ‘to an extent’ with the mother], indicating that [he], too, desires to maintain for the child[ ] some connection to the mother.”
78 So.3d at 443-44.
“The right to parent one’s child is a fundamental right, and the termination of that right should occur ‘ “only in the most egregious of circumstances.” ’ ” K.W. v. J.G., 856 So.2d 859, 874 (Ala.Civ.App.2003) (quoting L.M. v. D.D.F., 840 So.2d 171, 172 (Ala.Civ.App.2002), quoting in turn Ex parte Beasley, 564 So.2d at 952). Based *226 on our review of the record, we cannot say that the grandparents have established by clear and convincing evidence that the evidence in support of their petition in this case rises “ ‘to the level of being so clear and convincing as to support termination of the parental rights of the mother, such action being the last and most extreme disposition permitted by statute.’ ” V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998) (quoting East v. Meadows, 529 So.2d 1010, 1012 (Ala.Civ.App.1988)). We conclude that, in this case, maintaining the status quo is a viable alternative to termination of the mother’s parental rights. Accordingly, we reverse the juvenile court’s judgment insofar as it terminates the parental rights of the mother, and we remand the cause to the juvenile court for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The grandparents are the paternal grandparents of the child. The father of the child is not a party to this proceeding.

. The juvenile court’s judgment also denied the mother’s petition for custody and her petition for contempt. The mother did not raise any issues on appeal relating to the denial of either of those petitions.

. As this court explained in A.M.B. v. R.B.B., 4 So.3d 468, 471-72 (Ala.Civ.App.2007):
"This court has previously held that it is reversible error for a juvenile court to leave the matter of a noncustodial parent’s visitation rights to the sole discretion of a custodial parent or other legal custodian of the child. See, e.g., L.L.M. v. S.F., 919 So.2d 307 (Ala.Civ.App.2005) (reversing a juvenile court’s visitation award that placed the father in control of the mother’s visitation with the child), and K.B. v. Cleburne County Dep't of Human Res., 897 So.2d 379 (Ala. Civ.App.2004) (reversing a juvenile court’s visitation award that essentially conditioned the mother’s right to visitation with her child upon the consent of the child’s aunt and uncle); see also D.B. v. Madison County Dep't of Human Res., 937 So.2d 535, 541 (Ala.Civ.App.2006) (plurality opinion reversing a juvenile court’s judgment that made the mother’s visitation ' "subject to any conditions and limitations deemed to be necessary and appropriate” ’ by the child's great aunt, who was awarded custody of the child).”