THOMAS, Judge.
J.S.L. (“the mother”) is the mother of J.Z.L. (“the child”), who was born on November 29, 2012. The child’s father is unknown. On December 5, 2012, the Jefferson Juvenile Court adjudicated the child dependent and awarded her custody to the Jefferson County Department of Human Resources (“DHR”).[1] The juvenile court’s dependency judgment required the mother to submit to a substance-abuse assessment, to obtain and maintain housing, to complete domestic-violence-prevention classes, and to complete a series of parenting classes. The child was first placed with J.S., and, then, three weeks later, she was placed in foster care, where she remained at the time of the termination-of-parental-rights trial pertaining to, the child.[2] On September 19, 2013, DHR requested an order relieving it of the duty to provide reasonable services designed to reunite the family; the juvenile court entered the requested order after a hearing in December 2013. The mother failed to appear at the hearing; therefore, DHR’s request was unopposed.
On March 12, 2014, DHR filed a petition seeking the termination of the parental rights of the mother and the child’s unknown father. DHR asserted that the child is-the mother’s fifth child and that the mother’s parental rights to the child’s four half siblings (“the siblings”) have been involuntarily terminated due to the mother’s drug abuse, acts of domestic violence, and acts of physical abuse of the siblings. The termination judgments pertaining to the siblings were entered between 2002 and 2008. DHR asserted that the mother had failed to adjust her circumstances to meet the needs of the child, had failed to visit the child, and had failed to take advantage of reunification services provided by DHR; that those conditions were unlikely to change in the foreseeable future; and that no viable alternatives to termination of parental rights existed.'
On. September 3, 2014, the juvenile court entered a judgment terminating the, mother’s parental rights and awarding DHR permanent custody of the child.[3] The juvenile court based its termination judgment on its - findings that the mother’s parental rights to the siblings had been involuntarily terminated, that the mother had “not ever cooperated” with DHR, that the mother was unemployed, that the mother resided in subsidized housing, and that the mother had failed to support the child. The juvenile court noted that the mother had visited the child and that she had completed a drug-treatment program, a domestic-violence-prevention program, and a series of parenting classes. On September .16, 2014, the mother filed a notice of appeal seeking this court’s review of whether the juvenile court’s judgment is supported by clear and convincing evidence.
“This court’s standard of appellate review of judgments terminating parental rights is well settled'. A juvenile court’s factual findings, based on ore ténus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong. See, e.g., F.I. v. State Dep’t of Human Res., 975 *874 So.2d 969, 972 (Ala.Civ.App.2007). Under express dii-ection from our supreme court, in termination-of-parental-rights cases this court is. ‘required to apply a presumption of correctness to the trial court’s finding[s]’ when the trial court bases its decision on conflicting ore ten-us evidence. Ex parte State Dep’t of Human Res., 834 So.2d 117, 122 (Ala.2002) (emphasis added). Additionally, we will reverse a juvenile court’s judgment terminating parental rights only if the record- shows that the judgment is not supported by clear and convincing evidence. F.I., 976 So.2d at 972.”
J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1183 (Ala.Civ.App.2007) (footnote omitted). A juvenile court may terminate parental rights only when the evidence presented is “clear and convincing evidence, competent, material, and relevant in nature.” § 12-15-319(a), Ala.Code 1975.
The termination-of-parental-rights trial was held on July 10, 2014, and on August 2-1, 2014. Before the testimony began on the first day of the trial, the mother’s attorney requested a continuance because, she argued, that same morning the mother had informed her for the first time that she had successfully completed a substance-abuse program. The mother’s attorney stated that she had telephoned Ki-wanna Morris, an employee of the Aletheia House, who had confirmed the mother’s claim, and Morris additionally reported to the mother’s attorney that she had the records of the mother’s series of negative drug screens and the results of the mother’s psychological evaluation.. The attorney for DHR opposed the continuance, and the juvenile court declined to. continue- the trial, but it recommended requesting that Morris make documentation available to the court. However; at the close of the first day of the trial, the juvenile-court judge stopped the trial and stated orally:
“Okay. What’s happening here is. [the mother has] stuff nobody knows[,] including [her] lawyer, I think, which is sort of a surprise to everyone. All right, I am , of a mind to end [the] trial right now and just wait and resume it later. And here is why, (speaking to the DHR attorney) because there’s evidence here that would be important to me to know that no one — there’s not an attorney in here that knew any of this existed.
[[Image here]]
“Here’s what I want you to do. I’m going tu stop this trial right now and nothing is going to change. We’re just going to put it off and get this evidence [regarding what the mother is] doing. You (speaking to the mother) really need to communicate with your attor'ney.”
Testimony at the two-day trial indicated that DHR had assigned the child’s case to two caseworkers, first to Scarlett Holt in December 2012 and then to Adrian Hall in October 2013. Holt testified that the child was removed from the mother’s custody at birth because the mother’s parental rights to the siblings had been terminated. Under cross-examination by the child’s guardian ad litem, Holt admitted that the child was removed from the mother’s custody “based on previous issues,” that DHR was not aware of the mother’s “situation” at the time the child was born, that the mother was not tested for illegal substances when the child was born, and that the child was negative for illegal substances. The juvenile-court judge stated orally to the child’s guardian ad litem: “Now, the [dependency] petition ha[d] to do with the history.” Hall testified that the juvenile court had relieved DHR of its duty to provide reasonable efforts to reunite the family in December 2013 because of the *875 “prior [termination-of-parental-rights] cases.” .
The mother testified that she and the child had tested negative for illegal substances at the time of the child’s birth, although she admitted that she: had smoked marijuana until 2011. Hall testified that DHR’s concerns regarding possible drug abuse were based upon the mother’s history and that she did not suspect that the mother was using illegal substances, Morris testified thqt from January 2014 through June 2014 the mother had successfully participated in intensive, outpatient, substance-abuse group therapy at the Aletheia House. Morris praised the mother’s progress; she said that the mother had participated in learning about avoiding triggers, developing coping skills, and building a support system. Morris testified that she had been trained to observe behaviors that indicate drug abuse and that the mother had never done or said anything to make Morris suspect that the mother abused drugs. Although the mother and Morris testified that the mother had submitted to a number of drug screens, the documentary evidence did not support their testimony. The mother testified that she had desired to take a hair-follicle drug screen but that DHR had refused to provide a referral for such a drug screen because it was no longer providing services to the mother.
Regardless of whether the mother needed substance-abuse treatment or whether she eventually completed that treatment, the testimony demonstrated that the juvenile court had ordered the mother to undergo drug assessment and drug screening and that she had failed to comply with those orders before January 2014. As of October 2013, the mother had failed to submit to a substance-abuse assessment and she- had submitted to random drug screening only once. Holt said that the mother had complained of transportation issues, and Holt admitted that she had never provided bus passes to the mother. Hall said that she had. provided bus passes but that, the mother had still failed to submit to random drug screening. The mother testified that she used the .bus passes Hall provided to go to the Aletheia House for counseling. Hall said that the mother had not requested, and DHR had not provided, any additional financial assistance for the mother’s drug, screens. The mother said that she, had failed to appear for random drug screening because she did not have reliable transportation, because she did not have $10 for the drug test, and because she forgot to follow through with the requirements of random drug screening.
Hall testified that in 2014 the mother completed parenting classes at the Exchange Club as well as domestic-violence-prevention classes at the YWCA, and, Holt testified, DHR was no longer concerned about the risks of domestic violence in the mother’s home. Morris testified that the mother had joined- a supportive church.
Holt testified that the mother lived in federally subsidized housing. Holt had visited the mother’s1 residence once per month, and Holt said that it was clean and appropriate, although- the mother smoked cigarettes. Hall agreed that the mother had maintained 'housing; however, Hall testified that, in December 2013, the mother did not have electricity or food in the house. Hall said that the mother had reported that she did n‘ot halve adequate income, so she lived-with friends or in hotels. - The mother confirmed that the house had been without electricity for two months. Thereafter, Hall said, electric service was restored. Hall said that she had made an unannounced visit to the mother’s residence two days before the termination trial began, that the mother *876 had not been present so she did not go inside, and that the grass had been overgrown.
The mother admitted that she had failed to submit to a psychological evaluation at the time DHR had requested it. The mother testified that, three weeks before the termination trial began, Hall had again indicated to her that she needed to submit to a psychological evaluation. The mother said that she arranged to have her psychological evaluation administered at “Choices,” that' she had not received the results of the evaluation, and that Medicaid had covered the cost of the evaluation. She said that she was currently attending Choices once per month for counseling.
Holt and Hall said that the mother had never provided support for the child, although, they said, she had purchased clothing and gifts for the child. Holt testified that the mother was unemployed and that she received a monthly Social Security disability benefit based on a learning disability. The mother testified that she received $710 per month because she had been diagnosed with a “mild intellectual disability.” Morris described the mother as quiet and self-conscious, and, Morris said, the mother could complete an -assigned task if she understood the task.
Hall said that the mother had visited the child “most of the time” and that the mother had to be encouraged to interact with the child at the visits. ■ She said that the mother took photographs of the child but that she had to be prompted to hold the child or to play games-with her. Hall said that, based upon her observations, the mother would need help earing for the child if the child were in her custody.
Holt said that she had investigated the mother’s aunt and J.S. as relative resources in 2012. The maternal aunt did not pursue placement of the child. DHR placed the child with J.S.; however, J.S., who is not the mother’s relative (see supra note 2), relinquished custody after three weeks, and she reported that the mother had harassed her and had threatened J.S.’s mother. Hall said that she had investigated two additional .relative resources in the “early part” of 2014 but that placement was not approved as to either resource.
Thus, the evidence presented by DHR demonstrated that the juvenile court’s December 5, 2012, dependency judgment had required the mother to submit to a substance-abuse assessment, to complete domestic-violence-prevention classes, and to complete á series of parenting classes. Although commendable to some degree, the mother’s completion of those requirements in 2014 amount to “last-minute efforts undertaken in anticipation of the impending termination-of-parental-rights trial.” A.M.F. v. Tuscaloosa Cnty. Dep’t of Human Res., 75 So.3d 1206, 1213 (Ala.Civ.App.2011)(citing J.D. v. Cherokee Cnty. Dep’t of Human Res., 858 So.2d 274, 277 (Ala.Civ.App.2003)). Viewing the evidence before the juvenile court, including the mother’s history and her current conditions) the determination that the mother’s intellectual disability rendered the mother unable to discharge her parental responsibilities to and for the child and that that condition was unlikely to change in the foreseeable future is supported by clear and convincing evidence. § 12-15-319(a), Ala.Code 1975. Furthermore, the juvenile court heard testimony indicating that DHR’s reasonable efforts to rehabilitate the mother had failed, § 12-15-319(a)(7), that the mother’s parental rights to the child’s siblings had been involuntarily terminated, § 12-15-319(a)(8), that the mother had failed to support the child, § 12-15-319(a)(9), and that the mother had failed to cooperate with DHR, § 12-15-319(a)(12). Accordingly, the -juvenile *877 court’s judgment terminating the mother’s parental rights to the child is affirmed.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., dissents, without writing.
MOORE, J., dissents, with writing.

. The mother stipulated to the child’s dependency.

. The mother and J.S. first claimed that J.S. was the mother’s cousin; however, J.S. later admitted that she was not related to the mother.

.The juvenile court had served the unknown father with notice of the proceedings by publication, and its September 3, 2014, judgment terminated the parental rights of the unknown father as well.