Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0238

_____

### D.T., Jr.

### v.

### C.A.

### Appeal from Calhoun Juvenile Court
### (JU-23-288.01)

HANSON, Judge.

D.T., Jr. ("the father") appeals from a judgment entered by the Calhoun Juvenile Court ("the juvenile court") terminating his parental rights to K.A. ("the child"). As explained herein, we reverse the juvenile court's judgment.

In February 2023, C.A. ("the mother") commenced an action to terminate the father's parental rights to the child, who was born out of wedlock in July 2022. At the final hearing in this action, which was conducted in February 2024, evidence was presented indicating that, although the father had visited the child several times immediately following his birth, he had not visited the child since August 2022 and had provided little, if any, financial support for the child. The father admitted that he knew that he could have pursued visitation with the child through litigation but that he had chosen instead to "work on me." He also admitted that he had not asked for visitation during the pendency of the termination-of-parental-rights action, reasoning that the action would conclude quickly and he would be awarded visitation. The mother testified that, although an incident had occurred during the father's last visit with the child in August 2022, she had wanted the father to have a relationship with the child, but the father had chosen not to pursue one. She explained that she had commenced this action because, based on the father's past actions, including his early visits with the newly born child while the father was in questionable mental and physical states; his inactions, including not proactively seeking visitation

2

with the child before or after she filed this action; and her awareness of posts on the father's Snapchat account[1] suggesting his involvement with illegal substances, she had genuine concerns about the father's ability and commitment to parent the child. She stated that she believed that it was important for the child to continue to have a stable environment and life and expressed concerns about the father interacting with the child in the following exchange:

> "[The mother's counsel]: If this court doesn't grant your termination of parental rights, do you fear that [the father] could cause a disruption in your child's life?
>
> "[The mother]: I do.
>
> "[The mother's counsel]: All right. Do you fear that [the father's] depression or drug use could affect your child's life?
>
> "[The mother]: I do.
>
> "[The mother's counsel]: Would you fear that he's abandoned the child once, do you feel he would abandon the child again?
>
> "[The mother]: Yes…

---

[1]"Snapchat is a smartphone application that allows users to send pictures and videos (not to exceed 10 seconds in length) to friends or followers. Unlike other social media applications, videos uploaded to Snapchat stories disappear after 24 hours." In re M.H., 205 Cal. Rptr. 3d 1, 4, 1 Cal. App. 5th 699 (Ct. App. 2016).

"[The mother's counsel]: Do you think that's in your child's best interest?

"[The mother]: No.

"[The mother's counsel]: Do you think that's emotionally healthy for a child?

"[The mother]: No.

"[The mother's counsel]: Do you want your child to go through emotional instability?

"[The mother]: No.

"....

"[The father's counsel]: [The father] is willing to step up and be a dad to [the child]. Don't you think that would be in his best interest to have that dad, to share his love and affection with?

"[The mother]: If he does so.

"[The father's counsel]: He's told you -- he's indicated a willingness here in court today, correct?

"[The mother]: I heard that while I was pregnant as well."

The mother, a registered nurse, testified that she could care for the child financially, mentally, and emotionally by herself, that the maternal grandfather and the maternal uncle had been consistently active in the child's daily life, and that they would continue to be "great male role

4

models" for the child. She admitted that she was not dating anyone and that no plans existed for the child's adoption.

After considering the evidence, the juvenile court entered a judgment terminating the father's parental rights. In its judgment, the juvenile court found that clear and convincing evidence had been presented that the father had abandoned the child, see § 12-15-319(a)(1), Ala. Code 1975, and that, considering its finding that the father had abandoned the child, it would not consider viable alternatives to termination of the father's parental rights, see J.C.L. v. J.B.L., 370 So. 3d 254, 263 (Ala. Civ. App. 2022). The juvenile court further found that the child's best interest was served by termination of the father's parental rights. After the juvenile court denied the father's postjudgment motion, the father timely appealed the judgment.

> " 'This court's standard of appellate review of judgments terminating parental rights is well settled. A juvenile court's factual findings, based on ore tenus evidence, in a judgment terminating parental rights are presumed to be correct and will not be disturbed unless they are plainly and palpably wrong. See, e.g., F.I. v. State Dep't of Human Res., 975 So. 2d 969, 972 (Ala. Civ. App. 2007). Under express direction from our supreme court, in termination-of-parental-rights cases this court is "required to apply a presumption of correctness to the trial court's finding[s]" when the

trial court bases its decision on conflicting ore tenus evidence. <u>Ex parte State Dep't of Human Res.</u>, 834 So. 2d 117, 122 (Ala. 2002)(emphasis added). Additionally, we will reverse a juvenile court's judgment terminating parental rights only if the record shows that the judgment is not supported by clear and convincing evidence. <u>F.I.</u>, 975 So. 2d at 972.'

"<u>J.C. v. State Dep't of Human Res.</u>, 986 So. 2d 1172, 1183 (Ala. Civ. App. 2007)(footnote omitted).

"'Clear and convincing evidence' is '"[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion."' <u>L.M. v. D.D.F.</u>, 840 So. 2d 171, 179 (Ala. Civ. App. 2002)(quoting Ala. Code 1975, § 6-11-20(b)(4))."

<u>A.M. v. St. Clair Cnty. Dep't of Hum. Res.</u>, 146 So. 3d 425, 430-31 (Ala. Civ. App. 2013). "This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing." <u>K.S.B. v. M.C.B.</u>, 219 So. 3d 650, 653 (Ala. Civ. App. 2016).

On appeal, the father, among other arguments, contends that clear and convincing evidence does not support the juvenile court's finding that termination of his parental rights would serve the best interest of the

child. Specifically, the father maintains that because clear and convincing evidence was presented that the child resided safely with the mother and that no one was seeking to adopt the child, the evidence did not support the juvenile court's judgment that termination of his parental rights served the best interest of the child.

> "[W]hen one parent seeks to terminate the other parent's parental rights, … the trial court should determine whether the petitioner has met the statutory burden of proof and whether that termination is in the child's best interest, in light of the surrounding circumstances.
>
> "The two-prong test that a court must apply in a parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in [Ala. Code 1975, § 12-15-319(a)]. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered. …
>
> "Once the court has complied with this two-prong test -- that is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the child -- it can order the termination of parental rights."

Ex parte Beasley, 564 So. 2d 950, 954-55 (Ala. 1990).

7

The record in this case does not support the juvenile court's conclusion that terminating the father's parental rights would serve the best interest of the child. Unequivocally, the evidence establishes that the father does not have a relationship with the child. Some evidence was presented regarding the potential negative impact that a relationship between the father and the child may have on the child. For example, the mother testified that the child's life would be disrupted by introducing a relationship between the father and the child; that the father's depression and habits could negatively affect the child; and that the father, based on his past conduct, would absent himself from the child's life again. Considering the evidence, we cannot say that the mother's concerns are unfounded. However, because the evidence indicates that the father has never had a relationship with the child, the mother's concerns constitute speculation, not evidence, that a relationship between the father and the child would not serve the best interest of the child. Termination of a noncustodial parent's parental rights cannot rest solely on the convenience or the desire of the custodial parent, see S.D.P. v. U.R.S., 18 So. 3d 936 (Ala. Civ. App. 2009), should be confined to those cases in which the most egregious of circumstances

8

warrants such action, see <u>Ex parte Beasley</u>, 564 So. 2d at 952, and must be based on clear and convincing evidence. <u>K.S.B.</u>, supra. Because the record does not contain clear and convincing evidence supporting the juvenile court's determination that the best interest of the child would be served by terminating the father's parental rights, we reverse the judgment, and we remand the case for entry of a judgment consistent with this opinion. See <u>H.K. v. D.D.</u>, [Ms. CL-2024-0730, Jan. 24, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025), and <u>W.W. v. H.W.</u>, 384 So. 3d 663 (Ala. Civ. App. 2023).[2]

REVERSED AND REMANDED.

Edwards, Fridy, and Lewis, JJ., concur.

Moore, P.J., concurs in the result, without opinion.

---

[2]The resolution of this issue is determinative; therefore, we pretermit discussion of the other issues raised on appeal. See <u>L.M.W. v. D.J.</u>, 116 So. 3d 220, 223 (Ala. Civ. App. 2012).